DECISION AND JOURNAL ENTRY
{¶ 1} Reginald Edwards appeals a judgment of the Lorain County Court of Common Pleas, which found him guilty of domestic violence and drug possession, and sentenced him accordingly. We affirm.
 I. {¶ 2} Mr. Edwards had been cohabitating with the female victim for months. According to the victim, an argument led to physical violence by Mr. Edwards after which she waited and then fled the dwelling. According to Mr. Edwards, the victim threatened him with a knife which he wrestled away from her, after which they resolved the argument and went to bed together. Under both accounts, the victim summoned the police who woke Mr. Edwards and placed him under arrest.
 {¶ 3} The State indicted Mr. Edwards for domestic violence in violation of R.C. 2919.25(A), a fifth degree felony, possession of marihuana in violation of R.C. 2925.11(A), a minor misdemeanor, and possession of drug abuse paraphernalia in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. Mr. Edwards pled not guilty and the case proceeded to a jury trial. The jury convicted Mr. Edwards on all three counts. Mr. Edwards appealed, asserting two assignments of error.
 II. A. First Assignment of Error
"Whether the conviction for possession of drugs must be reversed as against the manifest weight of the evidence."
 {¶ 4} Mr. Edwards alleges that the victim's testimony was not credible. Specifically, he asserts that the victim's testimony of a violent struggle is inconsistent with responding officers' failure to observe any physical destruction or disorder in the home. Furthermore, by remaining in the home rather than fleeing immediately, he claims the victim has rendered her testimony of a violent assault unbelievable. Finally, Mr. Edwards points out that the victim exhibited the tell tale bruising to only one side of her neck, while a violent assault would surely have resulted in bruising all the way around her neck. From all of this, Mr. Edwards concludes that the jury verdict is against the manifest weight of the evidence and must be reversed. We disagree.
 {¶ 5} Reversal on manifest weight grounds is reserved for the exceptional case when the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340. Accord State v. Thompkins (1997),78 Ohio St.3d 380, 387. A conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable theory of innocence. See State v. Jenks (1991), 61 Ohio St.3d 259, 272. Similarly, on conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *5. In domestic abuse cases such as this, courts have held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. State v. Daniels, 9th Dist. No. 03CA008261, 2004-Ohio-828, ¶ 517; Felton v. Felton (1997),79 Ohio St. 3d 34, 44. Thus, the testimony of the victim may be enough, and does not need corroborating evidence.
 {¶ 6} Under R.C. 2919.25(A), domestic violence is enforced as "No person shall knowingly cause or attempt to cause physical harm to a family or household member." This provision extends to a living arrangement of mere cohabitation. State v. Williams (1997), 79 Ohio St.3d 459,1997-Ohio-79, paragraphs one and two of the syllabus.
 {¶ 7} The jury heard testimony from four witnesses and viewed photos of the victim's injuries to her face and neck. The State produced the victim and two police officers. Mr. Edwards testified in his own defense. Upon acknowledging that such testimony will inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 8} The State demonstrated that Mr. Edwards cohabitated with the victim and on the night in question caused her physical harm. The victim testified that she returned to her home from babysitting at about 5:00 p.m. to find Mr. Edwards drinking alcohol with one named Eugene. The victim scolded them and chased them out of her home. At approximately 3:00 a.m. the victim woke to Mr. Edwards yelling and beating on the front door until he finally kicked it in. When she descended the stairs, Mr. Edwards was already in the living room and he began yelling and pushing and beating and slapping her repeatedly. He also choked her and forced her to the floor. The vivid testimonial description corresponded to the injuries in the photographs. When Mr. Edwards relented, the victim went upstairs with him to wait for him to pass out drunk. Once he did, she fled and ran barefoot through the January cold to a nearby gas station to call the police.
 {¶ 9} Officer Rebecca Hall conducted the consultation with the victim, took the photos of her injuries, and escorted her to the hospital. Officer Hall also participated in the questioning of Mr. Edwards and testified that he never stated that the victim had a weapon. Officer George Wakeman was the initial responder to the victim's call for help. When he arrived, he found her crying, visibly injured and barefooted. The victim explained to him that she had been abused by her boyfriend, Mr. Edwards, and had run for help at the first opportunity.
 {¶ 10} Mr. Edwards testified in his own defense, which centered on his assertion that the victim attacked him with a kitchen knife and that he was merely defending himself until he could separate her from the knife. Mr. Edwards agreed that he and Eugene had been drinking, that the victim had chased them from the home at about 5:00 p.m., and that he had returned at 3:00 a.m. However, Mr. Edwards asserted that he did not kick in the door, but that it was already broken and would not even lock, although elsewhere in his testimony he protested that he had his own key to the house and could not have entered if he did not. He then testified that the victim had begun yelling at him from the window before he even entered the house and that once he was inside she charged down the stairs yelling and pushing. He responded peacefully until she attacked with a kitchen knife, whereupon he was forced to wrestle with her and twist her arm by the wrist until she released the knife. While Mr. Edwards attempted to explain the redness, scratches and bruises on the victim's face and neck as part of the struggle, he could not explain the absence of any similar redness or bruising on her wrists. Mr. Edwards testified that he told the police at the time of his arrest that she had been the aggressor with a knife. Both officers' testimony contradicted this claim.
 {¶ 11} Based on our review, we conclude that Mr. Edwards' criticisms of the State's evidence in this case are insufficient to find that the jury lost its way and created a manifest miscarriage of justice. SeeOtten, 33 Ohio App.3d at 340; Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved Mr. Edwards, and convicted Mr. Edwards accordingly. We conclude that the conviction is not against the manifest weight of the evidence. This assignment of error is overruled.
 B. Second Assignment of Error
"Whether the appellant is entitled to a new trial due to ineffective assistance of counsel."
 {¶ 12} Mr. Edwards alleges that his trial counsel was so ineffective as to render his conviction unjust and points to certain conduct by his attorney at trial as evidence of the purported ineffectiveness. Specifically, Mr. Edwards complains that his trial counsel failed to object at trial, failed to cross-examine certain witnesses adequately, and failed to subpoena a certain fact witness. Mr. Edwards reasons that due to this perceived ineffectiveness he deserves a new trial. We disagree.
 {¶ 13} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 14} An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *5, citing Strickland, 466 U.S. at 690.
 {¶ 15} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Although either step in the process may be dispositive, we will address the deficiency question first in this analysis, based on the particular errors Mr. Edwards claims in this appeal.
 {¶ 16} Mr. Edwards alleges that his trial counsel failed to object appropriately at trial, but he has not identified any particular instances in which his counsel failed to object, the basis for any deficiency, or any resulting prejudice. As a matter of law, an attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 23, citing State v. Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9; State v. Phillips (1995), 74 Ohio St.3d 72,85. Mr. Edwards has failed to show that counsel was deficient in this regard.
 {¶ 17} Mr. Edwards alleges that his trial counsel's cross-examination of the victim and the responding police officers was insufficient. As a matter of law, an attorney's decisions as to whether or not to cross-examine a witness and the extent of such cross-examination are tactical matters. Downing at ¶ 28, citing State v. Likosar, 9th Dist. No. 03CA0063-M, 2004-Ohio-114, at ¶ 26. Mr. Edwards has failed to show that counsel was deficient in this regard.
 {¶ 18} Mr. Edwards contends that his counsel failed to subpoena his friend to testify, and that testimony would have aided his defense. Speculation is insufficient to establish the requisite prejudice. Downing
at ¶ 27, citing State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 8-10. Mr. Edwards has not provided any documentation as to what his friend would have testified, or even who this friend is exactly. Mr. Edwards has failed to show that counsel was deficient or that he was prejudiced thereby.
 {¶ 19} Mr. Edwards' charges do not rise to the level of ineffective assistance of counsel. See Strickland, 466 U.S. at 687. This assignment of error is overruled.
 III. {¶ 20} Mr. Edwards' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Moore, J., Concur.